Ducker, Judge:
The Claimant, by virtue of subrogation to the rights of Carroll E. Walters, who was the owner of the automobile for which damages are claimed, alleges that on April 2, 1967, in Mounds-ville, West Virginia, Arthur Franklin Carver escaped from confinement in the State penitentiary and went to the residence of Carroll E. Walters and took and drove said Walters’ 1967 Chevrolet automobile about half a city block and collided with a 1961 Chrysler automobile driven by one James C. Meeks, causing damage to the Walters’ automobile in the sum of $1,002.24
The main facts which are undisputed are substantially to the following effect. Carver was serving an indeterminate sentence in the State prison, and in having a good prison record was near release from the prison, and has since been released, but that at the time of this incident Carver was serving as a “trusty” and was assigned work at the chicken farm of the prison on an eight hour shift from eleven o’clock the night of April 1,1967, until seven o’clock the next morning. In some way Carver obtained liquor and becoming “drunk”, left the chicken farm and proceeded into Moundsville to the Walters’ residence and there took the Walters’ automobile which had the car keys in it and drove it away and caused it to collide with the Meek car.
The evidence further shows how the chicken farm was operated by inmates who were used also in connection with other operations and the extent of their custody and confine *147 ment within the prison walls. The State Director of Correction who was in charge of all persons on probation and parole testified at length as to the practice of the prison officials in such matters and particularly as to the inmate Carver who caused the damage in this case. He said this inmate and many others were given work at the farm, chicken house, piggery and coal mine of the prison, and that there are approximately 165 men who work outside of the walls of the penitentiary each day. He also said that Carver had served a number of years in prison and was well-adjusted to such life; that Carver was not rebellious and that Carver’s record was clean and that he was really a very good risk. This witness also said that a “trusty” such as Carver was, was checked on three times every twelve hours and by a lieutenant of the guards, and that apparently Carver left the chicken house about 12:45 a.m. the morning of April 2d, and went immediately to the Walter’s home and after the accident was returned to the prison about three o’clock in the morning in a very intoxicated condition. The Director said that under the circumstances, particularly his near release time, he did not consider Carver an escapee but only an inmate who somehow on that one specific occasion got drunk and while drunk walked away.
It is considered good policy on the part of government institutions where persons are incarcerated because of criminal acts and convictions to include programs of rehabilitation and correction to place inmates on some type of or degree of probation and parole in order to give them some occupation or duties to perform, even where such duties must be performed outside the prison walls, and where a prisoner’s record is clean and contains no act which would provide reason to believe he could not be trusted. From these facts we cannot conclude there was any negligence on the part of the prison officials in making Carver a trusty and allowing him to do the work assigned to him. If the claim herein were allowed, the wholesome practice of parole would be materially destroyed. Nor do we think that the fact that Carver was able to obtain liquor and become intoxicated, when it was not shown that he had previously done so, is sufficient to attribute negligence on the part of the prison officials when the prisoner had a clean record and was near release at the time of such happening. It is not shown *148 how he obtained the liquor or its kind or quality, or that there was negligence on the part of the prison officials in such regard, nor was said alleged failure a proximate cause of the acts of Carver.
Our Courts have held that while the warden of the State Penitentiary is the lawful custodian of the convicts there confined, he is not personally liable for a tort committed by a convict unless he directly participated in its commission by a breach of duty. Kuhns v. Fair, 124 W. Va. 761. Where, however, gross acts of negligence on the part of a sheriff and his deputies which operated to weaken or injure a prisoner physically, and possibly to kill, such officer or officers are liable. Smith v. Slack, 125 W. Va. 812. And the negligent act of a sheriff or jailer is not liable where such act is not the proximate cause of the injuries, as such act must be the natural and probable consequence of the negligence. State ex rel Poulos v. Fidelity and Casualty Co., (W. Va.) 263 Fed. Supp. 88.
While in this claim the State is the defendant, this Court cannot waive the Constitutional immunity where there could be no liability against an individual or a corporation if the latter were defendant.
Considering the facts and the applicable law, we are of the opinion that there was no negligence on the part of the officers of the State and that there is no moral obligation on the part of State to pay the claim for damages in this case, and, consequently, we deny and make no award to the claimant in this case.
Claim Disallowed.